UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER MACKIE and JENNIFER COLLMAN,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CRUZ, et al.,<br><br>Defendants. | Case No. 19-CV-02096-LHK<br><br>**ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Plaintiffs Jennifer Mackie and Jennifer Collman bring this action against Defendants County of Santa Cruz, Santa Cruz County Sheriff's Office, Deputy Gabriel Gonzalez (collectively, the "Named County Defendants"); Ralph Millar; Peggy O'Connor; and Does 1–25. First Amended Complaint ("FAC"), ECF No. 24. Before the Court is the Named County Defendants' motion to dismiss. ECF No. 26. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS without prejudice the Named County Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

On May 27, 2018, Plaintiff Jennifer Mackie entered a lease for a home located in Santa

1
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

Cruz County, where Mackie planned to live with her teenage daughter. FAC ¶ 8. Mackie's landlord, Defendant Peggy O'Connor, furnished Mackie with two sets of keys and offered no indication that Mackie's neighbor, Defendant Ralph Millar, had access to the home. *Id.* However, a month after moving into the home, Mackie was visiting a local bookstore when she was contacted by her daughter, who informed Mackie that Millar had entered her home. *Id.* ¶ 9. Mackie contacted the Santa Cruz County Sheriff's Office and returned home. *Id.* When Mackie arrived, Mackie's daughter recounted that Millar had knocked on the door and rang the doorbell. *Id.* Mackie's daughter had not answered, and Millar had then proceeded to try to gain entry through several other doors. *Id.* Eventually, Mackie's daughter heard him "jingle what sounded like keys" outside the kitchen door, which prompted the daughter to hide in the bathroom. *Id.* Millar then spent roughly 20 minutes in the home before departing. *Id.*

Mackie swiftly confronted Millar about the incident, and Millar was initially friendly. *Id.* ¶ 10. At first, Millar asked whether Mackie had any questions about the newly rented home. *Id.* When Mackie pointedly asked whether Millar had been inside the home earlier in the day, Millar forthrightly admitted that he had been. *Id.* Millar explained that he had been worried that Mackie's dog had been left home alone. *Id.* When Mackie informed Millar that the dog had not been left alone, and that, in fact, Mackie's daughter had also been home, Millar grew upset. *Id.* Millar argued that Mackie's daughter should have answered the door when Millar had knocked. *Id.* Mackie then told Millar that Mackie had called the Santa Cruz County Sheriff's Office about the incident, at which point Millar became more hostile. *Id.* Millar told Mackie that no one at the Santa Cruz County Sheriff's Office would care about the incident. *Id.* Millar threatened Mackie and demanded that Mackie remove herself from Millar's porch. *Id.*

Mackie returned to her home and once again called the Santa Cruz County Sheriff's Office, which dispatched Defendant Deputy Gabriel Gonzalez and another officer to meet Mackie. *Id.* ¶ 11. When the officers arrived, Mackie relayed to them both Millar's earlier unauthorized entry into her home and Millar's subsequent hostility toward Mackie. *Id.* According to Mackie, the two officers responded with nonchalance. *Id.* ¶ 12. The officers informed Mackie that, on the

2

basis of Mackie's own account, Millar had committed only misdemeanors. *Id.* When Mackie asked the officers to assess whether Millar was dangerous, they responded by advising Mackie to obtain a restraining order if Millar entered her home again. *Id.* Over the next month-and-a-half, Mackie repeatedly contacted the Santa Cruz County Sheriff's Office in an effort to secure an incident report that Mackie hoped to use to terminate her lease without penalty. *Id.* ¶ 13. Mackie never received a response. *Id.*

One day, on August 15, 2018, Deputy Gonzalez visited Mackie again, and the pair shared an exchange at Mackie's door. *Id.* ¶ 15. At the time, Plaintiff Jennifer Collman, Mackie's friend, was also visiting Mackie. *Id.* Deputy Gonzalez claimed that, per Mackie's request, Deputy Gonzalez had attempted to engage with Millar, but Millar had seemingly been avoiding Deputy Gonzalez. *Id.* When Mackie pressed Deputy Gonzalez about the possibility of receiving an investigation report, Deputy Gonzalez informed Mackie that the Santa Cruz County Sheriff's Office had not generated a case number because Mackie had declined to press charges against Millar. *Id.* Mackie repeated her account of the events to Deputy Gonzalez, and Mackie stressed to Deputy Gonzalez her desire for an incident report to use to terminate her lease. *Id.* Deputy Gonzalez responded by assuring Mackie that he would follow up with Millar and by providing Mackie with a case number written on the back of a business card. *Id.*

Near the end of the exchange, Millar appeared in his doorway across the street. *Id.* ¶ 16. Deputy Gonzalez walked over to Millar to engage Millar in conversation, which prompted Millar to grow increasingly agitated. *Id.* Eventually, Millar hurled racial insults and threats at Deputy Gonzalez. *Id.* Millar also vented his hatred of law enforcement generally. *Id.* Millar professed to enjoy watching the murder of police officers on YouTube, and Millar told Deputy Gonzalez that the police would "never get a chance to put cuffs on" him. *Id.* Millar also turned his rancor on Mackie. Millar called Mackie a "fucking bitch [who had] better not call the [G]od-dam[n]ed cops one more [] time"; said that he owned a gun; and claimed that Mackie was a liar. *Id.* ¶ 17. For her part, Mackie watched and recorded the encounter on her phone. *Id.*

At the conclusion of the exchange, Deputy Gonzalez returned to his vehicle and departed

3
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

the scene. *Id.* ¶ 18. As soon as Deputy Gonzalez left, Millar stormed over to Mackie's home, where he punched a hole in the screen door and attempted to gain entrance. *Id.* ¶ 19. Unable to enter, Millar retreated across the street toward his own house, where a former girlfriend met him. *Id.* Millar desperately ranted to his former girlfriend that Mackie had ruined his life and that Millar would be sent to jail for life. *Id.* Millar returned to his home while his former girlfriend engaged with Mackie. *Id.*

Millar soon reemerged armed with a handgun. *Id.* ¶ 20. Mackie and Collman fled into Mackie's home, where the pair attempted to barricade themselves in the bathroom. *Id.* Mackie and Collman soon heard Millar burst into the home by battering down the front door. *Id.* Millar proceeded to the bathroom and began firing shots through the door; Mackie was struck by bullets twice. *Id.* Collman called 9-1-1, and police officers were dispatched to the scene. *Id.* ¶ 21. When the police arrived, the officers guided Collman to safety and arranged for an emergency airlift for the wounded Mackie. *Id.* ¶ 22. At some point in the tumult, Millar retreated to his home where he was subsequently apprehended by a Santa Clara County Sheriff's Office SWAT team. *Id.* ¶ 23.

**B. Procedural History**

Mackie and Collman filed a complaint against the Named County Defendants, Ralph Millar, Peggy O'Connor, and Does 1–25 in the Superior Court for the County of Santa Cruz, California. ECF No. 1 ("Notice of Removal") at 1; ECF No. 1-1 at 3.[1] On April 18, 2019, the Named County Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441(a) and (c), citing the complaint's inclusion of a claim arising under 42 U.S.C. § 1983. Notice of Removal at 2.

On June 13, 2019, Mackie and Collman filed the FAC. The FAC lists nine causes of action, and the bulk of them are state law claims against Millar and O'Connor. *See* FAC ¶¶ 24– 70. Because Millar and O'Connor are not party to the instant motion, we need not consider these causes of action. The FAC's last two causes of action, however, are alleged against all Named

---

[1] The initial complaint also named Sheriff-Coroner Jim Hart as a defendant, but his inclusion in the lawsuit was dropped when the Plaintiffs filed their FAC.

4
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

County Defendants.[2] These consist of a claim under 42 U.S.C. § 1983 (the eighth cause of action) and a claim for California common law negligence (the ninth cause of action).

Several weeks after the FAC was filed, on June 27, 2019, the Named County Defendants moved to dismiss the FAC's claims against them. ECF No. 26. Mackie and Collman opposed the motion on July 19, 2019, ECF No. 35, and the Named County Defendants replied on July 26, 2019. ECF No. 42.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, see *Shwarz v. United States*,

---

[2] The Court notes that the FAC only explicitly purports to plead the 42 U.S.C. § 1983 claim against the "[g]overnmental [d]efendants," which the FAC goes on to define as consisting of "Defendants County [of Santa Cruz] and SCSO [Santa Cruz County Sheriff's Office] and [the] Does." FAC ¶ 61. However, the substance of the section is most naturally read as alleging a § 1983 claim against Deputy Gonzalez as well; indeed, both parties have litigated the instant motion with this apparent understanding. *See* ECF No. 26 at 2; ECF No. 35 at 4. Accordingly, the Court construes the FAC as asserting a 42 U.S.C. § 1983 claim against Deputy Gonzalez as well as the other Named County Defendants. *See, e.g.*, *Fregoso v. Wells Fargo Dealer Servs., Inc.*, 2012 WL 12964899 (C.D. Cal. Mar. 19, 2012) (holding that collective description of defendants is permissible when defendants' individual involvement in the allegation is clear).

5
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

1  234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Indeed, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

As mentioned, Plaintiffs' FAC asserts nine causes of action, but only two are asserted against the Named County Defendants and are relevant to the instant motion. These consist of a claim under 42 U.S.C. § 1983 (the eighth cause of action) and a claim for California common law negligence (the ninth cause of action).

The Named County Defendants move to dismiss both. As to Plaintiffs' § 1983 claim against Deputy Gonzalez, the Named County Defendants argue that the so-called "state-created danger" doctrine is inapplicable to this case. As to Plaintiffs' § 1983 claim against the County of Santa Cruz and the Santa Cruz County Sheriff's Office, the Named County Defendants argue that

the two government entities are not liable under § 1983 and *Monell*. Finally, as to Plaintiffs' negligence claims, the Named County Defendants argue that California Government Code § 820.2 and various other statutory provisions confer immunity to the Named County Defendants in this context. The Court considers these arguments in turn.

**A. Individual 42 U.S.C. § 1983 Liability Is Not Adequately Pleaded**

In order to state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that "(1) the conduct that harm[ed] [Plaintiffs] [was] committed under color of state law (*i.e.*, state action), and (2) the conduct . . . deprive[d] [Plaintiffs] of a constitutional right." *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). When ruling on a motion to dismiss for failure to state a claim, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.

In the ordinary course, "members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties." *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). However, there are two exceptions to this rule. First, a cause of action may lie when a "special relationship" exists between the plaintiff and the state. *See, e.g.*, *Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011). Second, a cause of action may lie when the plaintiff's harm flows from a "state-created danger." *See id.* at 974. If either exception is present, it may be possible for a plaintiff to use 42 U.S.C. § 1983 to recover from state actors who have failed to protect them from harm inflicted by a third party. In any event, a plaintiff must allege facts showing that the police placed the plaintiff in a "worse position than that in which he would have been had [the police] not acted at all." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 201 (1989).

At various points in the FAC, Mackie and Collman hint that they may recover from Deputy Gonzalez because of a "special relationship" connecting them to Deputy Gonzalez beyond that of the baseline relationship that exists between all law enforcement officers and private citizens. *See* FAC ¶ 59 ("Deputy Gonzalez'[s] affirmative conduct, his unsolicited visit to Mackie's home, created a special relationship with Plaintiffs by assuming responsibility for their

7
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

welfare that gives rise to a duty to protect them from the known risk of harm presented by Millar."). However, in response to the Named County Defendants' motion to dismiss, Mackie and Collman conceded that the "state-created danger" exception provides the better framework to analyze their arguments concerning individual 42 U.S.C. § 1983 liability. *See* ECF No. 35 at 4 n.1 (conceding that "for this motion their Fourteenth-Amendment claim is better analyzed based on 'state-created danger'"). Accordingly, the Court proceeds to consider whether Mackie and Collman may recover against Deputy Gonzalez under the "state-created danger" exception.

In order to meet the requirements of the state-created danger exception, Mackie and Collman must show that Deputy Gonzalez "affirmatively place[d] the[m] [] in a position of danger," such that his "action[s] create[d] or expose[d]" them to "a danger which . . . [they] would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (citing *DeShaney*, 489 U.S. at 197) (internal quotation marks omitted). "The affirmative act [by Deputy Gonzalez] must [have] create[d] an actual, particularized danger, and the ultimate injury to the plaintiffs must [have] be[en] foreseeable." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

Additionally, Deputy Gonzalez must have acted with "deliberate indifference" to a "known or obvious danger." *Patel*, 648 F.3d at 974. The Ninth Circuit has explained that the standard applied in determining "deliberate indifference is even higher than gross negligence—deliberate indifference requires a culpable mental state." *Id.*; *see also Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997) (characterizing deliberate indifference as a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions"). Thus, for the state-created danger exception to apply, a state actor must "recognize[] [an] unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard for the consequences to the plaintiff." *L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996). A defendant is therefore deliberately indifferent if the defendant "knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it." *Id.* at 900.

In the FAC, Plaintiffs point to several actions undertaken by Deputy Gonzalez that the Plaintiffs allege meet the foregoing state-created danger requirements: "contacting [Plaintiff]

Mackie at her home in broad daylight as if she had summoned deputy sheriffs," "contacting Millar regarding her prior complaint," and "leaving the scene without calling for backup or taking any action to warn or protect Plaintiffs." FAC ¶ 56. Even assuming that each of these actions did in fact independently create an "actual, particularized danger" to Mackie and Collman—which the Named County Defendants do not concede, *see* ECF No. 42 at 3—Plaintiffs have failed to allege facts plausibly demonstrating that Deputy Gonzalez acted with deliberate indifference to that danger, as required for liability to attach.

The Court takes each alleged action in turn. First, at the time that Deputy Gonzalez elected to visit Mackie at her home to follow up on the case, Deputy Gonzalez knew only that Millar had entered Mackie's home once before and that Millar had then reacted negatively when Mackie confronted Millar about it. It is simply implausible to say that this knowledge alone rendered Deputy Gonzalez deliberately indifferent to provoking the extreme, violent response that Millar eventually carried out.

The same is true of Deputy Gonzalez's subsequent action: crossing the street to discuss the incident with Millar. First of all, Mackie had previously requested that Deputy Gonzalez "speak to Millar" to assess Millar's dangerousness, FAC ¶ 12, but Deputy Gonzalez had not yet done so. When he crossed the street, Deputy Gonzalez still knew only the initial facts surrounding Millar's interaction with Mackie, all of which are insufficient to plausibly allege that Deputy Gonzalez possessed a culpable mental state concerning Millar's eventual explosive reaction.

Finally, Mackie and Collman take issue with the fact that Deputy Gonzalez departed from the scene after his encounter with Millar without calling for back up or issuing a warning to Mackie and Collman. It is true that when Deputy Gonzalez made his decision to depart from the scene, he did so after personally bearing the brunt of Millar's verbal rancor. Deputy Gonzalez therefore possessed more firsthand information about Millar. However, at the time of Deputy Gonzalez's conversation with Millar, the bulk of Millar's anger was directed at the police and at Deputy Gonzalez himself. Based on these facts, it would have been reasonable for Deputy Gonzalez to conclude that personally lingering or calling for back up, which Plaintiffs allege to be

9

the obviously proper courses of action, may have only escalated the situation.

Indeed, the allegation that Deputy Gonzalez possessed sufficient information to render him deliberately indifferent to the danger allegedly caused by his departure is still implausible. The FAC contains no allegation that there had been any past criminal or violent acts by, or propensity for violence on the part of, Millar. The FAC does not allege that Deputy Gonzalez was personally aware of any such acts or propensity on the part of Millar, or that Deputy Gonzalez otherwise knew that Millar would become physically violent or engage in assaultive conduct. The FAC does contain the conclusory allegation that "Deputy Gonzalez either knew or should have known that Millar had preexisting mental issues and coveted firearms," FAC ¶ 57, but mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Moreover, it is unclear how the knowledge that Millar had mental issues (of an unspecified nature) and "coveted firearms" (but not that he had ever used them for violence) made Millar's explosive reaction obvious enough to rise to the level of deliberate indifference.

Thus, even taking the complaint in the light most favorable to the plaintiffs, it is implausible to say that Millar made his future intent to attack Mackie and Collman clear enough that Deputy Gonzalez may be said to have been deliberately indifferent when he decided to depart from the scene.

In opposing the motion to dismiss, Mackie and Collman argue that *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006), is "directly on point" and entitles them to prevail on the instant motion. ECF No. 35 at 6. However, *Kennedy* involved distinct facts from the ones before the Court in the FAC, and demonstrates why Mackie and Collman have failed to plead facts showing that Deputy Gonzalez was deliberately indifferent to danger here. In *Kennedy*, which involved a motion for summary judgment, a police officer defendant had been directly informed of "several incidents of what can only be described as alarming, aggravated violence" undertaken by the subject of a rape allegation, including "lighting a cat on fire and violently assaulting his girlfriend with a baseball bat after breaking into her house." 439 F.3d at 1064. In light of these

10

Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

previous incidents, "it was obvious that [the suspect] had a predilection for violence and was capable of the attack he in fact perpetrated on the [plaintiff]." *Id.* When the plaintiff in *Kennedy* conveyed the rape allegation and told the police officer defendant about the suspect's violent behavior, the police officer defendant specifically promised to notify the plaintiff before contacting the suspect for the sake of her safety. *Id.* The police officer defendant also assured her that he would patrol the neighborhood for the plaintiff's safety. *Id.* Ultimately, the defendant in *Kennedy* failed to fulfill either promise to the plaintiff. *Id.* at 1065.

The facts before the Court in the instant motion differ in several crucial ways. First, the FAC does not allege that Millar has a criminal record or previously engaged in acts of depravity or violence. The FAC also does not allege that Deputy Gonzalez was aware of any past violent acts committed by, or propensity for violence on the part of, Millar. Second, there is no allegation that Deputy Gonzalez made any representation to Mackie and Collman that he would notify them before contacting Millar. Such a promise could support the inference that Deputy Gonzalez was aware of the danger posed by Millar. Moreover, Mackie was aware that Deputy Gonzalez was going to contact Millar because she observed and filmed the contact. FAC ¶ 16. Third, there is no allegation that Deputy Gonzalez promised to provide—and then failed to provide—increased protection for Mackie and Collman. In the absence of facts of this nature, the Court cannot say that the FAC sufficiently alleges deliberate indifference on the part of Deputy Gonzalez. In the absence of this essential element of the state-created danger exception, Mackie and Collman's 42 U.S.C. § 1983 claim against Deputy Gonzalez must fail.

It is possible, however, that Mackie and Collman will be able to plead further facts to overcome this deficiency if they are granted another opportunity to do so. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

**B. No Entity Liability Under *Monell* Absent Underlying Constitutional Violation**

Next, Mackie and Collman allege that Defendants the County of Santa Cruz and the Santa

11
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

Cruz County Sheriff's Office are liable under 42 U.S.C. § 1983 on the basis of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977). FAC ¶¶ 61–64. This claim depends on the two entity defendants' alleged negligent hiring, alongside the entity defendants' failure to adequately train and supervise Deputy Gonzalez. *Id.*

"In order to establish liability for governmental entities under *Monell*, a plaintiff must prove: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks, citation, and alterations omitted).

The Ninth Circuit has held that "municipalities cannot be held liable when the individual police officer has inflicted no constitutional injury." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015). Because the Court has concluded that the FAC fails to adequately allege an underlying constitutional violation committed by Deputy Gonzalez, the Court must also dismiss the *Monell* claims against the County of Santa Cruz and the Santa Cruz County Sheriff's Office. *See id.*

As with their individual 42 U.S.C. § 1983 claim against Deputy Gonzalez, however, it is possible that Mackie and Collman will be able to plead further facts to overcome this deficiency if they are granted another opportunity to do so. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

**C. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' Negligence Claim**

Finally, Mackie and Collman allege that the Named County Defendants are liable under a theory of common law negligence. Mackie and Collman contend that: (1) Deputy Gonzalez is liable for negligence under California Government Code § 820(a) by failing to fulfill his duty to

12
Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

exercise ordinary care; and (2) the County of Santa Cruz and the Santa Cruz County Sheriff's Office are liable under a theory of vicarious liability under California Government Code § 815.2(a). FAC ¶¶ 67–69. For their part, the Named County Defendants assert a number of state law immunity-related defenses, such as the statutory immunity for "discretionary acts" available under California law. *See* ECF No. 35 at 17.

Because the parties are non-diverse, *see* FAC ¶¶ 2–6, the now-dismissed 42 U.S.C. § 1983 cause of action serves as the sole basis for federal subject matter jurisdiction in this case. Mackie and Collman invoke the Court's supplemental jurisdiction to hear their state law claims against the Named County Defendants pursuant to 28 U.S.C § 1367. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). However, "[w]here a district court has dismissed all claims over which it has original jurisdiction, it may sua sponte decline to exercise supplemental jurisdiction over remaining state law claims" under 28 U.S.C. § 1367(c). In determining whether to decline to exercise supplemental jurisdiction, the Court must consider the decision's effect on "economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Further, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Wren v. Sletten Const. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claim."). This is especially so when resolving the state claim would require the Court to resolve "novel and difficult questions of state law" in the first instance. *See, e.g.*, *Grutman v. Regents of Univ. of Calif.*, 807 F. Supp. 2d 861, 870 (N.D. Cal. 2011).

The balance of factors at this juncture points in favor of dismissing without prejudice Plaintiffs' remaining state-law claims against the Named County Defendants. This case has yet to

13

Case No. 19-CV-02096-LHK
ORDER GRANTING WITHOUT PREJUDICE MOTION TO DISMISS

proceed beyond the pleading stage, and no discovery has been conducted to date. Few judicial resources are wasted by dismissing the case at this stage, and dismissal promotes comity by allowing the California courts to interpret state law in the first instance. *See, e.g.*, *Conway v. Cty. of Tuolumne*, 231 Cal. App. 4th 1005, 1015–20 (2014) (resolving "issue of first impression" concerning whether California state law discretionary immunity extended to police decision to use tear gas during raise). Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law causes of action in the FAC.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Named County Defendants' motion to dismiss without prejudice. Should Plaintiffs elect to file an amended complaint, Plaintiffs shall do so within thirty days of this Order. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified herein or in Named County Defendants' motion to dismiss will result in dismissal with prejudice of the claims dismissed in this Order. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Produce 15.

**IT IS SO ORDERED.**

Dated: August 21, 2019

_____
LUCY H. KOH
United States District Judge